ANDERSON, CLAYTON & CO. *v.* DANIELS *et al.*

(Division B. Dec. 11, 1939.)

[192 So. 432. No. 33875.]

**A. A. Cohn**, of Brookhaven, for appellant.

**Webster Millsaps** and **W. S. Henley**, both of Hazlehurst, for appellees.

**Ethridge, P. J.**, delivered the opinion of the court.

The three named appellees filed separate suits against Anderson, Clayton & Company for the recovery of certain bales of cotton claimed to have been stolen from the respective appellees, which they claim were finally traced to Anderson, Clayton & Company at New Orleans, Louisiana. There was a judgment for each of the appellees for the value of their respective claimed cotton, from which judgment appellants prosecute an appeal here. On the trial of the cases below, by consent of counsel for both sides, the causes were tried and decided together. The suit was tried in the chancery court. How-

ever, the evidence in each case is separate, and each case depends upon its own proper evidence.

In the case of J. R. Daniels, the cotton was stolen from the premises of Daniels by one Smith, who was produced, and testified, as a witness for the plaintiff. Smith testified that he stole the said cotton from the premises of J. R. Daniels located upon the highway between Canton and Yazoo City, Mississippi; that, after stealing the cotton, he carried it to Lincoln County and turned it over to one McCullough, who carried it to Brookhaven and sold it and brought the money back and delivered it to him. McCullough sold cotton to Anderson, Clayton & Company corresponding in weight with that stolen from Daniels, but the weights were not identical, and the numbers were placed on this cotton at Brookhaven and shipped to New Orleans, Louisiana. The evidence in this case is sufficient to identify the cotton sold by McCullough to Anderson, Clayton & Company through their agent. The value of the cotton was proven sufficiently to warrant judgment in favor of Daniels.

In the case of P. H. Wharton, it appears that five bales of cotton were stolen from him on November 5, 1937. Wharton testified that he recovered two bales of the cotton before it was shipped out of the State. He also testified that the other three bales weighed 376, 386 and 562 pounds respectively, that these weights were substantially the same as the gin weights; and, that, he went to New Orleans in company with the Sheriff of Claiborne County, the Chief of Police of Hazlehurst, Mississippi, and a Negro named Willie Williams, who had ginned the cotton. Willie Williams testified that he had a peculiar method of wrapping and tying cotton. He operated a gin for an oil mill in Claiborne County, and it does not appear from the record how many customers he had at said gin the season involved, or how much cotton he ginned, wrapped and tied, using his peculiar (claimed) method. The substance of his testimony is that the cotton found in New Orleans at Anderson, Clayton &

Company corresponded in that the ties and bagging used and the method of fastening ties were similar to that used in his work at the said gin. He undertook to say from these circumstances that the three bales of cotton found in New Orleans were the bales which he ginned and wrapped for Mr. Wharton. In an effort to identify the stolen cotton, Wharton testified as follows: "A. I had this cotton under the shed right in the front yard, and there was manure there, and also I had just cut the lawn with the mowing machine and there was grass all over the cotton, pine straw, mud and gravel, where they had dumped it out in the road on a rainy night, and loaded it on a truck. It was all right there, weights all the same, the bagging the same; had some there that had the old-time bagging on it, and some had the new bagging on it.

"Q. From the marks, the manure, the bagging, and the staple of the cotton—A. (Interposing) That's right, the staple of the cotton.

"Q. You can testify positively—A. (Interposing) Yes, sir, I can testify positively it was my cotton."

He further testified that he had been growing cotton for twenty years, and, in addition to farming, was in the mercantile business; that, the staple of his cotton was from 1¼ to 1 3/16 inches; but he had not cut the cotton bagging to obtain a sample as he had procured a sample from the gin; at the time the cotton was grown it was worth 10¢ per pound; that, it was stored under a shed near his house, and there was a big lawn in front of his house which he had just mowed with a mowing machine; the night of the theft it was rainy, and it was rolled across this lawn to the highway, resulting in grass, pine straw, mud and gravel getting on the cotton. Mr. Wharton endeavored to identify the cotton found in New Orleans in the possession of Anderson, Clayton & Company by these indications, by reason of the grass, pine straw, mud and gravel, the unusual wrapping and tying, and by the fact that the bagging had not been cut for sam-

ples. He accounted for the discrepancy in the weights by the fact that the Negroes on the place improperly gauged the seed cotton picked, thereby ginning two light bales.

The testimony of Williams with reference to the method used by him in tying the cotton was as follows: "I tied it with the buckles, being thin, I tied the buckles even across all the way, and the ends of them was turned under, the ends of the ties turned out, and after they let the pressure off they don't straighten out, they stay that way."

The Sheriff of Claiborne County testified as a witness that he could not identify the cotton, but there was dirt and sand on the bagging of the bales he saw in New Orleans which Willie Williams claimed to be the cotton he had ginned for Mr. Wharton. He further testified that on being notified of the theft that he made an immediate investigation of the premises and from all indications the cotton had been loaded on a truck at the drain on the side of the road; after the hog wire fence had been cut and the bales rolled across the lawn; and there was physical evidence of where the bales had been mashed down and an imprint made in the mud, similar mud being on the bagging of the cotton inspected in New Orleans. He also testified that it had rained the night the cotton was stolen; that, one could clearly see the indentation of the bagging in the mud on the lawn, and that the bagging on the cotton in New Orleans was of the same mesh as indicated by the impressions in the mud in front of the house; and that there were blades of straw four or five inches long still sticking to the bagging that compared with the kind of grass on the lawn which the cotton had been rolled across, the lawn being three or four acres, or approximately 175 yards to the road, which had been mowed not very long before.

E. J. Harrison, an employee of the Mississippi Compress Company of Brookhaven, testified that his records showed cotton receipts Nos. 56851, 56852 and 56853 issued in the name of Ed Harris, and stated that this cotton was

delivered at the compress at Brookhaven, Mississippi, November 10, 1937, and was bought by Anderson, Clayton & Company.. Harris was not introduced as a witness, and there was nothing to show that Harris was the person who had stolen the cotton. It seems to have been assumed that the cotton was stolen and sold by Harris. There was other testimony showing that the cotton was bought from Harris, but one of the employees of the warehouse of the Mississippi Compress Company testified that he could not identify the cotton without identification marks or tags.

In our opinion, the evidence is insufficient to show that the cotton found in New Orleans is the identical cotton stolen. There is cotton throughout the cotton belt of the South amounting to millions of bales, with weights running comparatively the same, and with grades being largely the same in different classes. There is nothing to show that the mud in Claiborne or Lincoln counties is different from mud in other sections of the cotton belt over the country. As the cotton was sold by Harris, it would be necessary to trace it in his possession with sufficient proof. In other words, there should have been more definite proof with reference to Harris' ownership and sale of the cotton. The burden was on Wharton to make the proof and identify his cotton with reasonable certainty, and the evidence here does not show with reasonable certainty that Harris had anything to do with the stealing of the cotton, or whether the cotton sold by Harris was the same cotton that was stolen from Wharton. The cotton industry being one existing throughout the South, and it being necessary for cotton buyers and factors to buy from persons having possession thereof, they should not be held liable for having purchased stolen property on mere suspicious circumstances. It would be impossible for any person or concern, and especially large concerns, to. buy, handle and ship cotton if they could be held responsible for every theft on inconclusive evidence, based merely on similarities in appearance. The

proof should be highly convincing, or capable of producing a belief based on testimony founded on knowledge. We think that the court below was in error in rendering judgment in favor of Wharton on the testimony contained in the record.

In the case of F. G. Smith, three bales of cotton were stolen from him on October 1, 1937, which cotton had been ginned about the 28th of September, 1937, and was taken from near his blacksmith shop on Highway No. 84, fourteen miles west of Brookhaven in Lincoln County, Mississippi. Smith stated that he had traced the cotton to Brookhaven without giving basic facts with which the trace was supposed to have been made. He stated that the cotton was found in the Wesson Cotton Warehouse and was shipped to New Orleans. As to the identity of the cotton claimed, which was found in New Orleans, he testified: "A. I identified it by the samples and by the bagging. The bagging was very frail bagging. You could just reach up and pull it off with your hand. And at the time my cotton was put down in front of my shop, 84 Highway had just been finished—it wasn't quite finished, I don't think—no, sir, it wasn't finished then, and where I built my shop, I put it in the old highway, and I had to cut down the bank on the gravel, it was down grade. I built a level place right in front of my shop. Well, that was clay dirt, and it was throwed off in the mud, and when it was carried away it was rolled around and laid in the mud. I could see some parts of the mud on the cotton in New Orleans, and I could see the stain where it had been turned over.

"Q. What kind of mud was it? A. Clay dirt, clay mud.

"Q. Was it similar to the clay out there? A. Yes, sir."

He further testified that the cotton was in the compress at the time he saw it in New Orleans; that the Wesson Warehouse Numbers were 889, 890 and 891; that the weights were 540, 521 and 601 pounds, respectively, which

were about the same as the gin weights of his cotton but some of the bales had gained slightly. He also testified that he had filed a previous suit against the Mississippi Compress Company, but on investigation learned that he was in error. His identification of the cotton was based on the grade, short staple, and mud stains, which mud came from red clay dirt similar to that at his shop where the cotton was stored, also by the bagging being a peculiar "crocus sack" or cheap bagging.

H. H. Cupit, a resident of Franklin County, testified that he had ginned Smith's cotton; that, he went with Smith to New Orleans and he identified it as being of a peculiar short staple grade and that he was familiar with the grade raised by Smith as he had ginned for him many years; that, a "sorry" grade of bagging had been used on the cotton; that, there was clay dirt on the bales similar to that where the cotton had been stored; and, also, that the weights and grades corresponded.

W. C. Westbrook, an employee of the Wesson Cotton Warehouse Company of Wesson, Mississippi, testified that on October 4, 1937, the Wesson Warehouse issued its receipts, Numbered 889, 890 and 891, to John Harris; that, the weights of the bales were, No. 889, 540 pounds, No. 890, 521 pounds, and No. 891, 601 pounds.

E. M. Bee, a cotton buyer of Brookhaven, testified that he was employed by Anderson, Clayton & Company; that, he bought three bales of cotton from the Wesson Cotton Warehouse Company, being receipt Nos. 889, 890 and 891; and the price paid for the cotton; and that it was bought from John Harris and that the check in payment of the cotton had been made payable to John Harris, but the check had been endorsed by John Harris and W. Smith.

We are of the opinion that the evidence produced to itentify these respective bales of cotton of Wharton and Smith could be applied to many thousands of other bales of cotton. Neither Ed Harris nor John Harris were introduced as witnesses; nor was there any evidence by

which they could be identified as the thieves; nor that they did not have any cotton of their own, or that they had not bought cotton from other persons. In other words, the evidence does not amount to a probability. There is no showing as to why these witnesses were not introduced, or why proof was not offered as to how they came into possession of the cotton. So far as this record shows, there is no reason to believe that Harris was not the owner of the cotton, because we cannot say with any dependable certainty that the cotton found in New Orleans was the cotton which had been stolen from Smith. It is suggested in the attorney's brief that W. Smith was evidently the Willie Smith who testified for J. R. Daniels, and who had been convicted of stealing some cotton. We cannot assume this fact. It should have been proven either by direct or circumstantial evidence sufficient to show at least a probability. Willie Smith seemed to have been willing to testify that he stole Daniels' cotton, and at the time of the trial was in the penitentiary for stealing cotton, but he was not asked to testify with reference to the cotton involved in the Wharton and Smith suits; and, no reason is given for a failure to produce Harris as a witness with reference to cotton stealing. Courts can only try on proof, and proof must be sufficient to establish a probability, and for the failure to do so, judgment in favor of Smith is also reversed for an insufficient foundation. In fact, judgment must be rendered here in favor of Anderson, Clayton & Company to the cotton of Wharton and Smith.

Affirmed as to J. R. Daniels. Reversed and rendered as to P. H. Wharton and F. G. Smith.